**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| VAGISH LLC d/b/a CAMBRIDGE PLAZA HOTEL; and VA VA VAGISH LLC d/b/a LEGENDS LOUNGE, | ) ) ) ) | Civil Action No. 3:13-CV-03161-TLW |
| Plaintiff, | ) ) ) | |
| v. | ) | |
| SENECA SPECIALTY INSURANCE COMPANY, | ) ) ) ) ) | **REPLY IN SUPPORT OF SENECA SPECIALTY INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendant. | ) ) | |

Defendant Seneca Specialty Insurance Company ("Seneca"), by and through counsel, pursuant to Local Civil Rule 7.07, files its Reply in Support of its Motion for Partial Summary Judgment, respectfully showing the Court as follows:

## I.    INTRODUCTION

It is undisputed that Plaintiffs suffered a loss as a result of arson. It is undisputed that following the fire, Seneca promptly began its investigation of the arson, coordinated with state authorities on their investigation, retained multiple experts to investigate and gather information and evidence regarding Plaintiffs' claim, conducted an examination under oath ("EUO") of Plaintiffs' representative, and repeatedly requested information and documentation from Plaintiffs. It is further undisputed that approximately five months after the fire, with requests pending to Plaintiffs for documents and information needed by Seneca to adjust Plaintiffs' claim, Plaintiffs filed suit against Seneca alleging breach of contract and bad faith for an unreasonable delay in paying Plaintiffs' claim. In their Response to Seneca's Motion for Partial Summary Judgment, Plaintiffs use the paid opinions of their expert, Maurice Kraut, to criticize Seneca's

investigation.  Notably absent from Plaintiffs' Response is any explanation as to why Plaintiffs refused to provide the information and documentation Seneca requested prior to filing suit. Moreover, Plaintiffs avoid addressing Seneca's thorough investigation by asserting that Seneca should have assumed a quasi-police role and determined whether a non-party to the insurance contract caused the fire.  These arguments are intended to divert the Court's attention from the true facts of this case.

As shown in Seneca's Motion for Partial Summary Judgment, Seneca's investigation and adjustment of Plaintiffs' claim was reasonable.  During its investigation, Seneca discovered that Plaintiffs were in a severely poor financial condition at the time of the loss; the facts of the fire suggested that it was targeted in nature; Plaintiffs presented a claim well in excess of their contractor's repair estimate; Plaintiffs' representative, Kislaya Sinha, was the lead suspect in the South Carolina Law Enforcement Division's ("SLED") investigation; and Seneca was provided with information revealing that Mr. Sinha failed a polygraph test administered by SLED. Plaintiffs have not and cannot present evidence that under these circumstances, Seneca acted unreasonable in continuing to investigate and adjust Plaintiffs' claim.  As such, Plaintiffs cannot support their claims for bad faith, attorneys' fees, and punitive damages.  Moreover, because Legends Lounge was closed at the time of the fire and had been closed for approximately six months prior to the fire, under the terms of the Insurance Policy, Va Va Vagish cannot support their purposed loss of business income claim.  Finally, because the parties' chosen Umpire determined the amount of damages, not Seneca's liability to pay those damages, in the event this Court ultimately determines that Seneca is liable to Plaintiffs, Seneca is entitled to rely on the Umpire's Award to establish the amount of damages.

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A. Seneca Conducted a Thorough and Reasonable Investigation

Despite the mounting evidence to the contrary, Plaintiffs take the position that "Seneca conducted no investigation whatsoever." [Doc 104, p. 11]. In an effort to support this unfounded assertion, Plaintiffs state that Seneca "made no investigation into who set the fire and then tethered its coverage determination to the outcome of its non-existent inquiry." *Id*. at p. 13. In so arguing, Plaintiffs completely ignore the months of investigation that Seneca completed regarding Plaintiffs' claim, instead asserting that Seneca should have interviewed potential witnesses, requested Mr. Sinha's cell phone records, investigated the corporate form, contacted Super 8, or asked the suspect himself whether he was involved. [Doc. 104, p. 13].

With regard to interviewing witnesses, Seneca's duty under the Policy is to determine if its insured caused the fire. The evidence gathered by Seneca during its investigation supported a conclusion that Mr. Sinha was involved in the fire. [Doc. 101-4, p. 17-38; Doc. 101-1, p. 201-03; Doc. 101-3, p. 3; Doc. 101-6, p. 22, 24-25; Doc. 101-6, p. 48-51]. Given this, Seneca completed its due diligence by interviewing and taking the EUO of Mr. Sinha. [Doc. 101-2, p. 6, 12; Doc. 101-6]. Contemporaneously, Seneca was advised that a full investigation was being completed by SLED, who eliminated all suspects (including non-insured suspects) except for Mr. Sinha. [Doc. 101-2, p. 12; Doc. 101-13, p. 7-8]. With regard to requesting Mr. Sinha's cell records and investigating the corporate form, that investigation was completed by Seneca pre-suit. [Sinha EUO p. 8-12, 53-54, 60] [Relevant portions of Sinha EUO attached as Ex. "A"]. Concerning contacting Super 8, Seneca requested permission to contact Super 8 during Mr. Sinha's EUO. After the request was made, the following exchange occurred between Plaintiffs' counsel and Seneca's counsel:

3

**Mr. Harpootlian**:     Well, you have a [sic] permission with this caveat.  If anyone says anything disparaging or in any way says something that causes them to cancel this contract, we will consider that a very bad thing.

**Mr. Ouzts**:     Well, let's just do it this way.  You contact these gentlemen and obtain all communications, all records that they have regarding communications regarding this franchise agreement and specifically –

**Mr. Harpootlian**:  Well, you know, here's my other concern about that.  That is going to raise the question to them about what's going on here.  So I don't think we're going to give you that.  And if that's a problem, then it's a problem.

But he's got a great relationship with these folks, they've extended it and if they don't, I don't know why that would affect the insurance payment.  I don't understand how that would be relevant.  But I'm not - - I don't want to jeopardize his relationship with Wyndham.  Because right now they're ready to go forward and give him the extension, verbally, until the summer.  If we start questioning that saying the insurance company wants to see it, they're going to want to know why, and I think that's a problem; that could be a problem.

Again, it's the insurance company's refusal to pay that is - - that could put us in a position - - my client in a position where we might not get - - the flag might be pulled.  If you talk to the bank they might pull the loan.  And so we have a very, very tenuous position, and I don't understand how that's relevant to anything here.

**Mr. Ouzts**:  Well, it's relevant to motive because if there's a default in the franchise agreement then that subjects - -

**Mr. Harpootlian**:  *Well, tell Seneca if they want to deny this claim because he refused to allow you to talk to the franchisee, we'll be happy to litigate that.*

[Sinha EUO, p. 82-84] [emphasis added].

In sum, Seneca requested permission to contact Super 8, but was estopped from doing so by Plaintiffs.  Finally, with regard to asking Mr. Sinha if he was involved in the fire, Seneca had been provided with information from SLED indicating that SLED questioned Mr. Sinha regarding his involvement with the fire during a polygraph test, which Mr. Sinha failed.  [Doc. 101-3, p. 3].  As such, Seneca had no reason to re-ask the same question of Mr. Sinha during his EUO.  Moreover, Seneca's counsel, Steve Ouzts, testified that he did not ask Mr. Sinha if he was involved because he did not expect Mr. Sinha to confess.  [Doc. 105-7, p. 17-18].

4

Given the forgoing, it is readily apparent that Seneca conducted a thorough and reasonable investigation, including an investigation into the areas Plaintiffs allege Seneca's investigation did not reach.

> **1. There is Ample Evidence to Justify Seneca's Ongoing Investigation and No Evidence Suggesting that Seneca Sought to Avoid Making a Coverage Determination**

Plaintiffs again argue that there is no evidence to justify Seneca's ongoing investigation. [Doc. 104, p. 13-15]. For the sake of brevity, Seneca will not repeat the actions taken by Seneca during its investigation or the information gathered by Seneca that implicated Mr. Sinha in the fire. Those uncontradicted facts have been properly set forth in Seneca's Motion for Partial Summary Judgment. [*See* Doc. 101, p. 6-16]. In sum, the evidence gathered during Seneca's investigation establishes that Seneca's ongoing investigation was not an attempt to avoid making a coverage decision, but rather an attempt to gather additional information needed to both evaluate the extent of the Plaintiffs' claim and further explore Plaintiffs' financial condition and motive to commit arson. As part of that process, Seneca made repeated requests for specific documents and information. [Doc 101-1, p. 19, 63; Doc. 101-5, p. 14-15, 24; Doc. 101-6, p. 9-12, 15-16, 23, 38; doc. 101-10, p. 8-9]. However, as of the date suit was filed, Plaintiffs had still not provided Seneca with:

1. Professional fees payments and/or invoices subsequent to the date of loss.
2. Payroll journals and/or details for 2013.
3. Rental expense payments and invoices subsequent to the date of loss.
4. All contracts for the renovation project (including progress billing reports, applications, and certificates of payments)
5. Schedule for renovations (including revised schedules)
6. Details of any royalty payments paid or accrued.

[Doc. 101-10, p. 3]. Of these documents, categories (4) and (5) were requested from the

Plaintiffs on July 24, 2013, September 12, 2013, September 18, 2013, October 22, 2013, and November 11, 2013.  [Doc. 101-1, p. 63, 203; Doc. 101-5, p. 14-15; Doc. 101-6, p. 11; Doc. 101-10, p. 8-9].

Plaintiffs do not dispute that the documents and information were not provided to Seneca or otherwise make an effort to explain why Plaintiffs failed to cooperate with Seneca's requests. [*See* Doc. 104, p. 13-15].  Rather, Plaintiffs assert that their paid expert, Maurice Kraut, questions whether Seneca actually required the requested information.  [Doc. 104, p. 14]. However, Mr. Kraut testified during his deposition that he does not know what the documents relate to, why Seneca requested the documents, or if the documents were received by Seneca pre-suit.  [Kraut Dep. 86-88] [Relevant portions of Kraut Dep. attached as Ex. "B"].  Given this, it is difficult to accept that Mr. Kraut is in a position to determine if Seneca needed the documents and information that were requested, but not provided.  Even if Mr. Kraut did have an understanding as to what documents Seneca requested, how the documents relate to Seneca's adjustment of the claim, and whether Seneca ultimately received the documents pre-suit, Mr. Kraut is not a forensic accountant capable of evaluating why the documents were needed by Seneca's forensic accountant to determine Plaintiffs' financial condition.

The fact remains that Seneca had valid basis for its ongoing investigation, which included repeated requests for information and documents needed to evaluate both the extent of Plaintiffs' claim and their financial motive to commit arson.  Rather than cooperate with Seneca, Plaintiffs filed suit without providing the requested information and documents.

### 2.   Seneca's Circumstantial Evidence of Arson is Based on Objective Facts

Seneca does not seek summary judgment as to Seneca's defense that its insured committed arson.  The circumstantial evidence that Mr. Sinha committed arson, while

6

voluminous, will be left for a jury to consider.  However, the circumstantial evidence of arson

does establish as a matter of law that Seneca had a reasonable basis and therefore did not act in

bad faith by continuing to conduct its investigation of Plaintiffs' claim.  *See Crossley v. State*

*Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 360, 415 S.E.2d 393, 397 (1992) (an insurer acts in bad

faith only when there is no reasonable basis to support its decision).  In other words, the fact that

Seneca uncovered circumstantial evidence that its insured committed arson provided Seneca with

a reasonable basis for continuing to investigate without paying Plaintiffs' claim.  It is for a jury

to weigh and consider the following disputes Plaintiffs raise with regard to that evidence.

> **i.      Seneca's Investigation Established Sufficient Financial Motive
> on the part of Kislaya Sinha to Provide Seneca with a
> Reasonable Basis to Continue its Investigation**

Plaintiffs are critical of Seneca's financial motive evidence, which includes, among other

things, Cambridge Plaza's severely poor financial condition at the time of the loss; the fact that

Plaintiff Va Va Vagish was forced to close Legends Lounge after only being in business for

several months because the restaurant was not profitable; an impending deadline to convert to a

Super 8, despite the fact that the loan to finance the conversion had not closed as of the date of

the fire; and the fact that Plaintiffs presented a claim well in excess of their contractor's repair

estimate.[1]  Specifically, when faced with this evidence, Plaintiffs are critical that Seneca failed to

consider the following information pre-suit:  (1) that Mr. Sinha was only a 1% owner; (2)

Plaintiff Vagish planned to lose money while operating as the Cambridge Plaza Hotel; (3) Super

8 would have provided an extension under the franchise agreement; (4) Seneca did not know if

Plaintiffs had financing in place for the rebranding to a Super 8; and (5) Seneca failed to follow

---

[1] Plaintiffs make no effort to address or reconcile how Plaintiffs submitted a proof of loss totaling
$1,742,067.13, when their contractors repair estimate totaled $746,651.36, or that Plaintiffs
failed to submit any information or documentation during the adjustment process supporting the
$1,742,067.13 figure contained in their proof of loss. [Doc. 101-7, p. 3-8; Doc. 101-1, p. 4].

up with a list of witnesses provided by Kislaya Sinha.  Again, while it will be for a jury to

determine if Mr. Sinha indeed had a financial motive to commit arson, as set forth below, each of

forgoing criticisms, to the extent the information was made available to Seneca, were addressed

by Seneca pre-suit.

As an initial matter, Mr. Sinha's ownership interest in Vagish is irrelevant.  The fact

remains that he was an owner along with his family and the business provided a source of

income to him.  A jury can determine if this was a sufficient financial interest to burn a failing

business for insurance proceeds, which could then be used to rebrand the hotel into a profitable

business.  With regard to Vagish's "plan" to lose money, Mr. Sinha was questioned during his

EUO about Vagish's financial losses.  [Doc. 101-6, p. 26-28].  At no point did Mr. Sinha

mention that it was his "plan" to lose money.  Rather, this line of reasoning was first set forth by

Mr. Sinha during his deposition, which occurred almost two years after suit was filed.  Because

the relevant inquiry into Seneca's alleged bad faith is limited to the time period between Seneca

learning of the loss (June 17, 2013) and the date suit was filed (November 22, 2013), information

provided by Plaintiffs post loss cannot be considered.  *See Howard v. State Farm Mut Auto. Ins.*

*Co.*, 450 S.E.2d 582, 585, 316 S.C. 445, 448-49 (1994).  Similarly, any information regarding an

extension under the Super 8 contract was not provided to Seneca until after suit was filed and

cannot be considered in evaluating whether Seneca acted in bad faith.[2]  With regard to financing

for the Super 8 conversion, Mr. Sinha testified during his EUO that the loan had not closed as of

the date of the fire and was scheduled to close until the end of June (following the date of the

fire).  [Sinha EUO, p. 102-03].  Finally, with regard to a list of suspects that Kislaya Sinha made,

Plaintiffs have provided no evidence that Mr. Sinha ever provided a list of suspects to Seneca

---

[2] As referenced herein, Seneca requested permission to contact Super 8 pre-suit, but was
estopped from doing so by Plaintiffs.

pre-suit, despite Seneca's on-going contact with Mr. Sinha, including interviews with Mr. Sinha and conducting his EUO.[3]

### ii.    Seneca's Investigation Established Sufficient Evidence of Opportunity on the part of Kislaya Sinha to Provide Seneca with a Reasonable Basis to Continue its Investigation

Plaintiffs assert that Seneca did not request Kislaya Sinha's cell records until after suit was filed, and that had the records been requested pre-suit, cell tower analysis would have established that Mr. Sinha did not have an opportunity to start the fire. [Doc. 104, p. 19]. This is patently false, as Mr. Sinha's cell records were requested by Seneca pre-suit, but not provided until November 12, 2013, nine days before suit was filed. [Doc. 101-6, p. 23; Doc. 101-5, p. 26-27]. Without sufficient time to have an expert complete a cell tower analysis, Seneca was left with Mr. Sinha's testimony that at the time of the fire, Mr. Sinha resided approximately 10 miles from the Cambridge Plaza Hotel. [Sinha EUO, p. 58]. Any cell tower analysis that is now being provided by the Plaintiff is irrelevant to whether Seneca acted in bad faith. *Howard*, 450 S.E.2d at 585.

### 3.    As a Matter of Law, Seneca is Entitled to Summary Judgment due to Plaintiffs' Failure to Comply with all Conditions Precedent to Filing Suit

Plaintiffs misconstrue Seneca's request for summary judgment based on the insured's failure to comply with all conditions precedent prior to filing suit. Specifically, Plaintiffs allege that Seneca must show that it was prejudiced by the Plaintiffs' failure to comply. [Doc. 104, p. 22]. Plaintiffs would be correct if Seneca were seeking summary judgment as to Plaintiffs' breach of contract claim. However, Seneca seeks summary judgment as to Plaintiffs' bad faith claim. [*See* Doc. 101, p. 19-27]. It is well settled under South Carolina law that an insured's

---

[3] In fact, Plaintiffs' own expert has testified that he does not know if the list of suspects was provided to Seneca pre-suit. [Kraut Dep. p. 66].

failure to comply with all conditions precedent prior to filing suit permits a court to determine, as a matter of law, that the insurer did not act in bad faith in not paying the insured's claim. *Shiftlet v. Allstate Ins. Co.*, 451 F. Supp. 2d 763, 772 (D.S.C. 2006). As outlined in Seneca's Motion for Partial Summary Judgment, pre-suit, Seneca repeatedly requested documents from Plaintiffs that were needed to evaluate both the extent of Plaintiffs' claim and Plaintiffs' financial motive to commit arson. [Doc. 101, p. 9-14]. Under the terms of the Policy, Plaintiffs had a duty to provide the requested information and otherwise cooperate with Seneca during the claim adjustment process. Under South Carolina law, while this failure creates a question for a jury as to whether Seneca's claim adjustment was prejudiced, South Carolina law is clear that Plaintiffs' failure to comply with a condition precedent to filing suit bars Plaintiffs' bad faith claim. *Shiftlet*, 451 F. Supp. at 772.

**4. This Court Can Consider SLED's Investigation with Regard to Seneca's Motion for Partial Summary Judgment as to Plaintiffs' Bad Faith Claim**

Plaintiffs clearly do not want this Court to consider the fact that SLED conducted an investigation of Kislaya Sinha, who to this day remains the only suspect in SLED's investigation. [Doc. 104, p. 23-25; Doc. 101-13, p. 7-8]. Moreover, Plaintiffs do not want this Court to consider the fact that Mr. Sinha failed a polygraph test, which was communicated to Seneca during the adjustment process. [Doc. 104, p. 23-25; Doc. 101-3, p. 3]. In support of their position, Plaintiffs cite *Rabon v. Great Southwest Fire Insurance Co.*, 818 F.2d 306 (1987). However, *Rabon* is not instructive, as *Rabon* involved an insurer's arson defense being prejudiced by reference to the dismissal of criminal arson charges. *Id*. at. 307. *Rabon* did not deal with a bad faith claim.

In the instant case, Seneca seeks summary judgment as to Plaintiffs' bad faith claim, not whether Mr. Sinha committed arson. South Carolina law is clear that there is no *per se* rule

excluding the results of polygraph tests. *See State v. Council*, 515 S.E.2d 508, 335 S.C. 1

(1999); *In re Robert R.*, 340 S.C. 242 (2000); *U.S. v. Blake*, 571 f.3d 331 (4th Cir. 2009)

(polygraph results are admissible if not offered for the truth of the matter asserted, but for

another limited purpose).  Moreover, other jurisdictions routinely hold that the results of

polygraph tests are admissible when examining whether an insurer acted in bad faith.  *See Moss*

*v. Nationwide Mut. Ins. Co.*, 943 F.2d 49, 24 Ohio App. 3d 145 (1985) (*citing Moskos v. Nat'l*

*Ben Franklin Ins. Co.* 376 N.E.2d 388, 391, 60 Ill. App. 3d 130, 134) ("the better rule of law,

and the one adopted herein, is that where an insured claims bad faith and the lack of a basis for

rejecting coverage by an insurer, the results of a polygraph examination of the insured, taken

with his consent, are admissible").  Here, Seneca does not offer evidence of SLED's

investigation or Mr. Sinha's failed polygraph test as evidence that Mr. Sinha committed arson.

Rather, Seneca offers this evidence to illustrate that Seneca had a reasonable basis and did not

act in bad faith in investigating and handling Plaintiffs' claim.

### 5.    Seneca is Entitled to Summary Judgment on the Question of Attorneys' Fees, Punitive Damages, and Consequential Damages

Attorneys' fees are only available under S.C. Code § 38-59-40 when the refusal to pay

the policyholder's claim was "without reasonable cause or in bad faith."  In the instant case, the

evidence establishes that as a matter of law, Seneca had reasonable cause to investigate

Plaintiffs' claim and did not act in bad faith.  A finding of no bad faith moots Plaintiffs' claim

under S.C. Code § 38-59-40.  *See Myers v. Gov't Emples, Ins. Co.*, 302 S.E.2d 331, 279 S.C. 70

(1985).  Given this, Plaintiffs cannot demonstrate that Seneca's conduct "was willful, wanton, or

undertaken with reckless disregard of Plaintiff's rights," which is a required in order to receive

an award of punitive damages.  *Kuznik v. Bees Ferry Assocs.*, 538 S.E.2d 15, 32 (S.C. Ct. App.

2000).  As detailed in Seneca's Motion for Partial Summary Judgment, given the incendiary

nature of the fire, the Plaintiffs' financial motive to commit arson, the extent of the claim, the need for additional information to support the claimed damages, the factors implicating Mr. Sinha in the fire, and the ongoing investigation of SLED, Seneca's claim investigation was objectively reasonable and timely.

### B.  Seneca is Entitled to Summary Judgment to Enforce the Umpire's Award

Plaintiffs assert that the Umpire's Award cannot be enforced because the award was not paid within 30 days from the date the Award was issued.  However, a cursory review of the Policy reflects that a claim is to be paid "within 30 days after we receive the sworn proof of loss, *if you have complied with all of the terms of this Coverage*."  [Doc. 1-1, p. 40] [emphasis added].  As has been addressed above, Plaintiffs did not comply with all terms of coverage by refusing to provide Seneca with documents and information needed by Seneca prior to filing suit. While Plaintiffs' acknowledge that Mr. Sinha sat for an EUO, Plaintiffs make no effort to reconcile Plaintiffs' blatant refusal to provide Seneca with requested documents and information (some of which had been requested repeatedly starting in July of 2015) prior to filing suit.  [Doc. 104, p. 29].  Moreover, because the circumstantial evidence of arson implicated Mr. Sinha in the fire, Seneca had concerns that its insured had violated the Policy's "Concealment, Misrepresentation or Fraud" clause.  [*See* Doc. 1-4, p. 13].  As such, Seneca was under no duty to pay the Umpire's Award when it was issued.

As set forth in Seneca's Motion for Partial Summary Judgment, the Umpire's Award established the amount of damages, not Seneca's liability to pay those damages.  [Doc. 101, p. 33-35].  Seneca was entitled to obtain the Umpire's Award for use at a later date once Seneca's liability to Plaintiffs has been determined.

12

**C.  Seneca is Entitled to Summary Judgment as to Va Va Vagish's Loss of Business Income Claim Because the Subject Fire Did Not Cause Va Va Vagish's Loss**

Va Va Vagish's Policy provides coverage for loss of business income when there is a suspension of operations "caused by direct physical loss or damage to property at premises which are described in the Declarations." [Doc. 1-1, p. 46].  As an initial matter, Plaintiff Va Va Vagish, the owner of Legend's Lounge restaurant ("restaurant"), cannot establish that its operations were suspended as a result of the fire because Va Va Vagish closed the restaurant in January of 2013, six (6) months before the fire occurred.  [Doc. 101-11, p. 9; Doc. 101-12, p. 6]. In an effort to create coverage, Plaintiffs assert that the restaurant's operations should be defined as "Renovation." [Doc. 104, p. 33].  If Plaintiffs' flawed reasoning is considered, a business under renovation would have no lost profits because by definition, the business would be renovating and therefore not operating.  However, Legends Lounge was a restaurant and operated as such at the time the Policy was issued by Seneca in November 2012, and continued operating as a restaurant until January of 2013.  [Doc. 101-12, p. 6].  It is evident that the fire did not cause a suspension in the operation of the restaurant; rather, the owners made a conscious decision to close the restaurant because the restaurant was not and never had been profitable.  *Id.* at p. 9.  As such, Va Va Vagish did not suffer a loss of business income stemming from the fire. *American Resources Ins. Co. v. Palmer*, No. 4:08-0314-RBH, 2010 WL 3282579, at *11 (D.S.C. Aug. 19, 2010).

In a last ditch effort, Plaintiffs assert that despite the fact that the restaurant was not open at the time of the fire and was never profitable, business income can be calculated under the Policy's Extended Business Income coverage.  [Doc. 104, p. 33].  However, Extended Business Income is only available when the loss of business income "is caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss."

[Doc. 1-1, p. 48].  Va Va Vagish has presented no evidence that a fire, which caused damage to an adjacent building owned by another LLC, prevented Va Va Vagish from operating the restaurant.  Rather, the reality is that the restaurant was closed for more than six (6) months prior to the fire because it was never profitable.  Given this, it was not foreseeable that the restaurant would suffer lost profits as a result of the fire.  Accordingly, because Plaintiffs cannot establish that the fire damage to the Cambridge Plaza Hotel caused a loss of income to the adjacent Legends Lounge restaurant, Seneca is entitled to summary judgment as to Va Va Vagish's loss of business income claim.

### III.    CONCLUSION

Because no genuine issue remains regarding Plaintiffs' bad faith, punitive damages, and attorney's fees claims, Seneca is entitled to Summary Judgment as to those claims.  Moreover, because Plaintiff Va Va Vagish cannot establish that its operations were suspended as a result of the fire, Seneca is entitled to Summary Judgment as to Va Va Vagish's loss of business income claim.  Finally, because the Umpire's Award determined the amount of damages, not Seneca's obligation to pay those damages, Seneca is entitled to an Order enforcing the Umpire's Award in the event this Court ultimately determines that Seneca is liable to pay Plaintiffs' damages.

Respectfully submitted,

DREW ECKL & FARNHAM, LLP

*/s/Russell Thomson*
Russell Thomson
Fed Id No.  11870
Paul W. Burke
Admitted *Pro Hac Vice* (GA Bar No 095642)
Eric R. Mull
Admitted *Pro Hac Vice* (GA Bar No 556860)

880 W. Peachtree Street
Atlanta, GA  30357-0600
Telephone:    (404) 885-1400

14

15

rthomson@deflaw.com
pburke@deflaw.com
emull@deflaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing **REPLY IN SUPPORT OF SENECA SPECIALTY INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT** on all counsel by using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

This 4th day of March, 2016.

_/s/Russell Thomson_
Russell Thomson
Fed Id No.  11870

P.O. Box 7600
Atlanta, Georgia  30357-0600
(404) 885-1400
(404) 876-0992 (fax)

6292215/1
05596-088833

16