# EXHIBIT "B"
# Deposition of Maurice Kraut

COPY

# In the Matter Of:

## VAGISH vs. SENECA SPECIALTY

3:13-CV-03161-TLW

# MAURICE R. KRAUT

*September 11, 2015*



ESQUIRE SOLUTIONS — 800.211.DEPO (3376) — EsquireSolutions.com

MAURICE R. KRAUT  
VAGISH vs. SENECA SPECIALTY

September 11, 2015  
66

```
 1    Q.   Okay.
 2    A.   I didn't develop any of those names on
 3         -- I -- I -- I'm not sure what your
 4         question is, but if your question is
 5         did I develop any of those on my own,
 6         no, I got those from the material.
 7    Q.   Sure.  That was my question was if you
 8         recall what materials you obtained them
 9         from.
10    A.   Right.  And that's what I was
11         answering.  From -- from the --
12    Q.   From the material.
13    A.   -- production in the file.
14    Q.   Okay.  And then numbers 24 to 28, those
15         were residents at the hotel at the time
16         of the fire; is that correct?
17    A.   Correct.
18    Q.   And do you know if Seneca was provided
19         with that list before the suit was
20         filed?
21    A.   No, but that should have been -- the
22         initial investigation by Seneca should
23         have been, do you know of any witnesses
24         and can you provide their names.
25    Q.   Do you know if the insured contacted
```



800.211.DEPO (3376)  
EsquireSolutions.com

3:13-cv-03161-TLW    Date Filed 03/04/16    Entry Number 115-2    Page 4 of 6

MAURICE R. KRAUT                                September 11, 2015
VAGISH vs. SENECA SPECIALTY
                                                               86

```
 1        exhibits attached to the EUO.  And I
 2        think those are sufficient to -- for
 3        Vagish to support their loss.  Then
 4        it's up -- then it's up to Seneca to
 5        prove or disprove what -- what Vagish
 6        is claiming.
 7   Q.   Are you aware that at the Examination
 8        Under Oath a number of documents were
 9        requested that the insured provided
10        after the examination concluded?
11   A.   Yes.
12   Q.   And do you know what those documents
13        related to?
14   A.   I don't have it in front of me, but,
15        no, I don't.
16   Q.   Okay.  Do you know if those documents
17        were provided by Vagish to Seneca
18        before suit was filed?
19   A.   I don't, but I believe that Seneca was
20        given unfettered access to Vagish's
21        accountant.  And so any question that
22        Kislaya couldn't answer, should have
23        been able to be answered by his
24        accountant.
25   Q.   Okay.  And I was talking about
```

```
 1             documents though.  Are you aware that
 2             there was a document request made after
 3             the Examination Under Oath?
 4    A.   Correct.
 5    Q.   Are you aware that those documents were
 6             provided before suit was filed?
 7    A.   I don't know.
 8    Q.   Okay.  Would that be important to your
 9             analysis?
10    A.   It -- it could be, but my review of the
11             documents that were supplied, in other
12             cases I've handled that was sufficient
13             for me to do my investigation as to
14             whether or not those documents supplied
15             were accurate.
16    Q.   Okay.  And you just told me that you
17             don't know why the documents were
18             requested in this case; right?  You
19             don't know that the documents they --
20             the documents requested, they went to
21             establishing the amount of the loss, or
22             the motive to commit the loss?
23    A.   Correct.
24    Q.   You don't know what the documents went
25             to --
```



MAURICE R. KRAUT  
VAGISH vs. SENECA SPECIALTY  
September 11, 2015  
88

```
 1   A.   Correct.
 2   Q.   -- right?
 3   A.   Seneca should have sat down with
 4        Kislaya and worked out their
 5        differences.
 6   Q.   Okay.  Page nine, top of the page.
 7        "Seneca refused to assist the insured
 8        with the submission of the proof of
 9        loss."  Do carriers assist their
10        insured's in completing a proof of loss
11        when there's a question of liability,
12        or a question of coverage?
13   A.   Generally, no, they resolve the
14        question of coverage.  But once the
15        question of coverage is resolved, they
16        do assist the insured with the proof of
17        loss.
18   Q.   Okay.  In this case when the proof of
19        loss was completed was there still a
20        question of coverage?
21   A.   Yes.  And in Seneca's mind apparently
22        there's still a question of coverage.
23   Q.   So you just told me then that if
24        there's a question of coverage an
25        insured does not assist in completing
```



800.211.DEPO (3376)  
EsquireSolutions.com