# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Vagish, LLC, doing business as Cambridge Plaza Hotel, and Va Va Vagish, LLC, doing business as Legends Lounge,<br><br>Plaintiffs,<br><br>vs.<br><br>Seneca Specialty Insurance Company,<br><br>Defendant. | C/A No.: 3:13-cv-03161-TLW |

**Reply to Defendant's response in opposition to Plaintiffs' motion to strike**

Plaintiffs Vagish, LLC, doing business as Cambridge Plaza Hotel, and Va Va Vagish, LLC, doing business as Legends Lounge (collectively, "Vagish") moved the Court to strike from Defendant Seneca Specialty Insurance Company's (Seneca's) motion for partial summary judgment, memorandum in support, and all accompanying exhibits (Dkt. No. 101) all mention of any arson investigation by the South Carolina Law Enforcement Division (SLED) or, in the alternative, bar any evidence concerning a polygraph conducted by SLED.[1] Seneca opposes the motion raising two arguments. See Dkt. No. 117. They are considered in turn.

First, Seneca argues "Plaintiffs reliance on Rabon v. Great Southwest Fire Insurance Co., 818 F.2d 306 (1987) is misplaced[,]" because in that case the insured sought to raise the dismissal of criminal charges in response to an insurer's arson defense. Dkt. No. 117 at 2. This is a distinction without a difference. The reason for the rule is twofold:

---

[1] As these matters were also integral to Vagish's opposition to Seneca's motion for summary judgment, the arguments in support of the motion were set forth in Vagish's response in opposition to that motion. See Dkt. No. 104 at § II.A.4

> First, such evidence goes directly to the principal issue before the jury and is highly prejudicial. Second, a prosecutor's decision not to prosecute and a jury's decision to acquit in a criminal trial are based on different criteria than apply in a civil proceeding. In particular, a prosecutor's decision to *nolle prosse* may take into account many factors irrelevant in a civil suit, such as the higher standard of proof required for criminal conviction. In any event, a prosecutor's opinion whether the insured started the fire is inadmissible since based on knowledge outside his personal experience.

Rabon, 818 F.2d at 309; see also American Home Assurance Co. v. Sunshine Supermarket, Inc., 753 F.2d 321, 325 (3d Cir.1985) (same); Brown v. Allstate Ins. Co., 542 S.E.2d 723, 725 (S.C. 2001) (same); Kelly's Auto Parts, No. 1, Inc. v. Boughton, 809 F.2d 1247, 1253 (6th Cir. 1987) ("Of course, as a matter of consistency and fairness, the insurer may not admit evidence that criminal arson charges have been brought against the insured."). These considerations are even more persuasive here where Seneca proposes to interject an inference of wrongdoing by someone who was never even charged with a crime. The rule in Rabon should control here and prevent the parties from presenting evidence concerning SLED's investigation.

This conclusion is buttressed by Rules 401 and 403 of the Federal Rules of Evidence, concerning relevance and unfair prejudice, confusing the issues, and misleading the jury, respectively.[2] Evidence is relevant if "it has any tendency to make a fact more or less probable" and "the fact is *of consequence* in determining the action." Fed. R. Evid. 401 (emphasis added); see also Fed. R. Evid. 402. ("Irrelevant evidence is not admissible."). The question for the jury here is whether Seneca acted in good faith, a standard measured by whether Seneca met its duty to investigate the claim and take action based on objectively reasonable evidence. See, e.g., State Farm Fire & Cas. Co. v. Barton, 897 F.2d 729, 731 (4th Cir. 1990); Flynn v. Nationwide Mut. Ins.

---

[2] While the present motion seeks to strike the SLED investigation from the summary judgment record, Vagish intends to move the Court *in limine* to bar the investigation and mention of it from evidence at trial for the reasons already submitted and discussed here.

2

Co., 281 S.C. 391, 395-96, 315 S.E.2d 817, 820 (Ct. App. 1984). Seneca had a duty to investigate, regardless of whether SLED conducted any investigation, because Seneca's duty is to the insured. As Vagish's insurance expert Mo Kraut testified, the police have a different role: "The police are trying to determine from a criminal standpoint who set this fire so they can protect society. Kislaya Sinha pays Seneca to protect him in the event of a fire." M. Kraut Dep. 53:15-20, Dkt. No. 107-1. In discerning whether Seneca met its duty to Vagish, SLED's investigation is of no consequence.

Likewise, Rule 403 bars the introduction of probative evidence that runs the risk of causing "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Even assuming SLED's investigation is probative (it is not), its introduction runs the risk of confusing the issues and misleading the jury. See, e.g., In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Products Liab. Litig., 810 F.3d 913, 922 (4th Cir. 2016) (upholding exclusion of regulatory compliance evidence where the district court sought to avoid a "mini-trial" on a collateral issue); United States v. Zayyad, 741 F.3d 452, 462 (4th Cir. 2014) (upholding exclusion where proffered evidence "threatened to lead the jury into pure speculation based on no foundational evidence" as to the defendant's state of mind). To allow either party to argue the inferences based on an inconclusive SLED investigation places that investigation central to this dispute in lieu of Seneca's conduct. These concerns are precisely what motivated the decision in Rabon and are grounds for giving it effect here.

To be clear, Vagish does *not* suggest that underlying facts that happen to fall within the scope of SLED's investigation could not come into evidence. While Rabon excludes evidence concerning law enforcement activity, it does not exclude underlying facts. See Rabon, 818 F.2d at 309 (noting that the insurer's use of evidence developed during the fire investigation was

relevant and "carefully excised references to any resulting criminal charges against [the insured] or anyone else."). For example, photos taken by SLED are admissible if introduced by a non-law enforcement witness capable of laying a proper foundation. The distinction Seneca seeks to draw here turns on its contention:

> Unlike in Rabon, Seneca is not using the SLED investigation as evidence suggesting that Plaintiffs or their represented did or did not commit arson; rather, Seneca references the existence of the SLED investigation and ensuing polygraph test as evidence showing what Seneca knew at the time Seneca was investigating and adjusting Plaintiff's claim.

Dkt. No. 117 at 2. In other words, Seneca's stated justification for including the SLED investigation in the record is, not that it evidences the fact that Vagish or Mr. Sinha committed the arson, but that it proves Seneca knew SLED was conducting an investigation. Seneca would introduce substantive testimony from SLED concerning an inconclusive investigation under the pretense of establishing it knew such an investigation was underway. This is probative of nothing at all as it is difficult to imagine an instance in which law enforcement would *not* investigate an arson. Law enforcement conducted an investigation in Rabon, but that did not render the investigation admissible. Instead, the question for the factfinder is whether *Seneca's investigation* and handling of the claim was reasonable. Seneca's knowledge that law enforcement was investigating is immaterial.

Moreover, the pretense offered here is belied by the testimony of Seneca's corporate manger, adjustor, and attorney tasked with handling this claim and Seneca's own argument seeking summary judgment on Vagish's bad faith claim. In asking the Court to conclude it acted reasonably, Seneca claims Mr. Sinha "failed" a polygraph administered by SLED and that he was the "only suspect in SLED's investigation of the arson." Dkt. No. 101 at 10. Nowhere in this record is there any evidence concerning who administered the examination, what questions were asked,

4

or which questions SLED believes Mr. Sinha responded to with an untruthful answer.[3] Nevertheless, now Seneca argues this should be considered, not as evidence that inculpates Mr. Sinha, but to show Seneca was aware of SLED's investigation—a use inconsistent with the very purpose for which it was first offered.

It is also inconsistent with the views of Seneca's employees and agents tasked with handling this claim. As detailed at length in opposition to Seneca's motion for partial summary judgment (see Dkt. No. 104 at § I.C & II.A.2), those witnesses all concede that Seneca failed to pay the claim because of suspicions Mr. Sinha was responsible for the fire. For example, when asked whether Seneca "believed or had a suspicion that either an employee of or agent of Vagish, had committed the arson," Seneca's lawyer, Steven Ouzts answered, "That's my understanding, yes." S. Ouzts Dep. 33:23-34:25, Dkt. No. 105-7.

The facts of this case are simple: Seneca took the unreasonable, uninformed view that Mr. Sinha committed the arson because that would allow it to avoid paying the claim. Since that belief has proven false, Seneca seeks to bolster its position by relying on SLED's investigation. It should not be permitted to do so, just as Vagish is unable to attack Seneca's belief by crediting SLED's decision not to file charges. Such an inquiry is a substantial diversion of the factfinder's attention, immaterial to the legal claims raised, and the reason Rabon should control here.

---

[3] While this argument focuses on the summary judgment record, it can be resolved far more easily at trial where Vagish intends to move for exclusion of the polygraph by raising one additional argument, namely, Seneca's inability to call a competent, qualified witness to testify about the polygraph. Seneca has *never* identified the polygraph examiner as a witness in this case—not in response to interrogatories or expert disclosure requirements. Even assuming this Court was prepared to qualify such and expert to testify, he is excluded from testifying at trial on account of Seneca's failure to identify him as a witness. See Fed. R. Civ. P. 37(c)(1); Campbell v. United States, 470 F. App'x 153, 156 (4th Cir. 2012) (Rule 37(c)(1) imposes an "automatic sanction" of exclusion) (citing S. States Rack And Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 595 n.2 (4th Cir. 2003)).

Second, Seneca argues "South Carolina law is clear that there is no per se rule excluding the results of polygraph tests." Dkt. No. 117 at 2-3 (citing State v. Council, 515 S.E.2d 508 (S.C. 1999); In re Robert R., 531 S.E.2d 301 (S.C. 2000); and United States v. Blake, 571 F.3d 331 (4th Cir. 2009)). Seneca is correct that *South Carolina courts* do not apply a per se rule, but instead subject polygraph evidence to the scrutiny of the states evidentiary rules. Of some note is the fact that this is routinely grounds for exclusion, not inclusion. For instance, in Council the state Supreme Court explained:

> After an analysis under these standards, we find the polygraph evidence inadmissible in this case. The evidence is not probative on the issue of whether appellant was acting under the influence of Douglas. Unless the jury is allowed to speculate, the fact that Douglas' exam showed deception does not prove that Douglas was lying or that Douglas committed the crimes against Mrs. Gatti. Douglas' deception on the polygraph test fails to support appellant's assertion that Douglas committed the crimes. Therefore, this evidence does not assist the jury. See Rule 702, SCRE. Further, because it would only confuse and mislead the jury, any probative value of this evidence would be outweighed by its prejudicial effect. Rule 403, SCRE.

Council, 515 S.E.2d at 520 (footnote omitted). Were such an analysis necessary here, the Court should likewise be concerned that admitting the polygraph—or whatever evidence of it Seneca would offer—will confuse and mislead the jury on a matter of no probative value.

Nevertheless, in this proceeding, the Federal Rules of Evidence govern, see Fed. R. Evid. 1101, even substantive claims arising under state law. See, e.g., Longenbach v. McGonigle, 750 F. Supp. 178, 180 (E.D. Pa. 1990). While Rule 501 of the Federal Rules of Evidence allows for the recognition of an evidentiary privilege when state law provides the rule of decision for a claim (see United States v. Cartledge, 928 F.2d 93, 96 (4th Cir. 1991) (subject to being weighed against a countervailing federal interest)), the question concerning the polygraph's admissibility in this case is not a question of privilege, but whether Rule 702 provides a procedure for the admissibility of polygraph evidence. South Carolina courts have answered that question with a reluctant

6

"sometimes," while the Fourth Circuit has held that post-Daubert, the per se rule remains the law of this circuit. United States v. Prince-Oyibo, 320 F.3d 494, 501 (4th Cir. 2003).

The only federal precedent cited by Seneca is United States v. Blake, 571 F.3d 331 (4th Cir. 2009), which is distinguishable here. In Blake, a criminal defendant was arrested for a carjacking murder after his co-conspirator was arrested and implicated the defendant as having shot the victim. Id. at 335. The defendant agreed to talk to the police and accused the co-conspirator of being the shooter. Id. at 336-37. The defendant agreed to take a polygraph and after the police told him it indicated deception, he provided additional details concerning his involvement. Id. at 337. The district court allowed the government to present evidence relating to the polygraph at trial, a decision the defendant appealed. Id. at 346.

The Fourth Circuit affirmed the district court's decision to admit the polygraph because the defendant interjected the issue into the case by claiming his statements to the police were involuntary. The court reasoned:

> Polygraph results are generally inadmissible. See United States v. Brevard, 739 F.2d 180, 182 (4th Cir. 1984). However, "testimony concerning a polygraph examination is admissible where it is not offered to prove the truth of the polygraph result, but instead is offered for a limited purpose such as rebutting a defendant's assertion that his confession was coerced." United States v. Allard, 464 F.3d 529, 534 (5th Cir. 2006) (collecting cases); cf. United States v. Mohr, 318 F.3d 613, 626 (4th Cir. 2003) (holding that district court was within its discretion in permitting witness to explain, on redirect examination, that it was his concern over an impending polygraph that caused him to make a written statement when defendant had opened the door for such testimony by suggesting, on cross-examination, other possible, improper motives).

Id. at 346 (4th Cir. 2009). Prior to trial, the government stated it did not intend to make any reference to the polygraph unless the defendant argued his statement was coerced. Id. at 346-47. During opening statements, defense counsel argued in precisely the manner the government anticipated causing the district court to rule the defendant had opened the door and that it would

7

be up to the government to decide how to use the evidence. Id. at 347. Not surprisingly, the Fourth Circuit upheld the district court's decision because "[t]o allow such an attack to go unanswered would have been unfair." Id. at 348.

Thus, a far better reading of Blake is that the per se prohibition against polygraph admissibility can be displaced if the opponent to admissibility opens the door. Vagish takes no issue with this proposition, but a district court's decision to apply the opened-door doctrine does not displace the default prohibition against the polygraph's use.

For these reasons in addition to those already explained, this motion should be granted and SLED's investigation should be struck from the summary judgment record or, at a minimum, all mention of the polygraph should be struck from the record.

[signature page follows]

Respectfully submitted by,

s/Richard A. Harpootlian
Richard A. Harpootlian (Fed. ID No. 1730)
rah@harpootlianlaw.com
Christopher P. Kenney (Fed. ID No. 10147)
cpk@harpootlianlaw.com
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street (29201)
Post Office Box 1090
Columbia, South Carolina 29202
(803) 252-4848
Facsimile (803) 252-4810

Leigh J. Leventis (Fed. ID No. 2661)
leighleventis@aol.com
THE LAW OFFICES OF LEIGH J. LEVENTIS
1913 Bull Street (29201)
Post Office Box 11067
Columbia, South Carolina 29211
(803) 256-0113
Facsimile (803) 799-1612

James M. Griffin (Fed. ID No. 1053)
Griffin | Davis
1116 Blanding Street
P.O. Box 999 (29202)
Columbia, South Carolina 29201
Telephone: (803) 744-0800
jgriffin@griffindavislaw.com

ATTORNEYS FOR PLAINTIFFS

March 18, 2016
Columbia, South Carolina.