## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| Vagish, LLC, doing business as Cambridge Plaza Hotel, and Va Va Vagish, LLC, doing business as Legends Lounge,<br><br>                Plaintiffs,<br><br>vs.<br><br>Seneca Specialty Insurance Company,<br><br>                Defendant. | C/A No.: 3:13-cv-03161-TLW |

### Plaintiffs' Memorandum of Law in Opposition to
### Defendant's Supplemental Motion for Summary Judgment

Defendant Seneca Specialty Insurance Company (Seneca) filed a supplemental motion for summary judgment arguing Plaintiffs Vagish, LLC, doing business as Cambridge Plaza Hotel, and Va Va Vagish, LLC, doing business as Legends Lounge (collectively, "Vagish") failed to comply with a Protective Safeguard Endorsement in the policy and that this purported failure bars relief under all theories joined here. See Def.'s Supp. Mot., Dkt. No. 140.

At no time since the hotel arson, more than three years ago, has anyone—not Seneca's investigators, adjustors, experts, or lawyers—raised this theory as grounds to exculpate Seneca of any obligation to adjust and pay Vagish's claim until Seneca filed this supplemental motion. Seneca's conduct throughout indicates it intended for the policy to remain in effect regardless of any alleged non-compliance with the Protective Safeguard Endorsement. After conducting a thorough inspection of the motel property months before the fire, and learning the third and fourth floors were in a state of disrepair and unsecured, Seneca never complained about the security of these floors. Seneca did not cancel the policy and did not return any premium as

unearned. Instead, Seneca continued to collect premiums from Vagish. Moreover, after its post-loss investigation, Seneca issued proof of loss forms to the insured and accepted them in completed form. After questioning Mr. Sinha (during his EUO) and others about the condition of the locks on the doors to the fourth floor hotel rooms, Seneca asked this Court to enforce a contractual appraisal provision and attempted to pay (albeit in an untimely manner) the appraisal award. In its cover letter, Seneca's counsel states "[g]iven that Seneca has now had an opportunity to obtain and process most, if not all of the information outlined above, ***Seneca has been able to reach a coverage decision and hereby tenders payment of $796,686.12.***" Dkt. No. 137-8 at 7 (emphasis added). As a result, Seneca knowingly waived any claim of breach of the Protective Safeguard Endorsement.

## RELEVANT FACTUAL BACKGROUND[1]

In the spring of 2012, Vagish reopened the Cambridge Plaza Hotel and began operating the property while also pursuing basic improvements. See Dkt. No. 134 at 3. On December 13, 2012, H&S Loss Control Inspections, Inc. (H&S), a third-party inspector, inspected the Cambridge Plaza Hotel. See Commercial 5003 form, SENECA 3787-89 (attached as **Exhibit A**). The inspection report states that "[o]nly the rooms on the 1st and 2nd floors are open for business. The top two floors will be renovated later." Id. at 2. The report also explains that each room was equipped with its own heating and air conditioning unit on the first two floors "have been renovated, so each unit has been checked or replaced. The replaced units were taken from down units on the third or fourth floors and refurbished." Id. With respect to recommendations, the report states: "None." Id. at 3.

---

[1] Vagish respectfully incorporates the factual background set forth in its initial memorandum in opposition to Seneca's motion for summary judgment (see Dkt. No. 134) as if set forth here verbatim. Facts probative to the issue here are discussed below.

2

Mr. Sinha explains that the air conditioning units were "pass through" units and that many of the units on the third and fourth floor had been removed, creating several large openings in the exterior walls to many rooms. K. Sinha Decl. ¶ 4 (attached as **Exhibit B**). Vagish placed louvers, or grills, in the wall to cover the openings created by the removal of the pass through air-conditioning units. Id. ¶ 5. These louvers were not locked into place and could have been removed without tools and with minimal manual pressure. Id. During the inspection, the H&S inspector inspected the third and fourth floor of the hotel and, to Mr. Sinha's recollection, never raised concerns about the manner in which those rooms were secured. See id. ¶ 7. Nor did Vagish receive any written deficiency notice from H&S or Seneca concerning the protective safeguards after the inspection. Id. ¶ 8.

On March 29, 2013, Vagish entered into a franchise agreement with Super 8 Worldwide, Inc. (Super 8) to convert the Cambridge Plaza into a Super 8 franchise property. Dkt. No. 134 at 3-4. On April 1, 2013, Vagish received a Certificate of Liability Insurance identifying the Seneca policy at issue in this case to be *in effect*. K. Sinha Decl. ¶ 10 & Ex. 2. During this entire period and up through the fire on June 14, 2013, Vagish continued to timely pay insurance premiums to Seneca. Id. ¶ 11. Seneca never returned *any* premium payment made by Vagish. Id. ¶ 12.

Vagish sent Seneca notice of the loss the day after the fire. From June 17 to August 30, 2013, independent adjustors, experts, and consultants investigated every aspect of the loss *except* facts concerning who set the fire. See Dkt. No. 134 at 4-6 (detailing the investigation). On July 26, 2013, Vagish's counsel requested a proof of loss form. Id. at 6. Another request was made on August 1, 2013, at which point Seneca provided the proof of loss form. Id. On August 15 and September 26, Vagish submitted proofs of loss on its structural and business property, and business income losses, respectively. Id. at 6-7.

After this action was filed, Seneca moved the Court to *enforce* the policy's appraisal provision by dismissing or staying this case pending completion of the appraisal process. See Dkt. Nos. 6 & 10. The Court granted Seneca's motion and ordered appraisal. See Dkt. No. 40. On January 8, 2015, the umpire issued an award for structural damage and business property claims. See Dkt. No. 101-8. Six months later, and more than 18 months after the fire, Seneca "reach[ed] a coverage decision" and tendered a check purporting to pay the umpire's structural and property damage award and suggesting a future payment for business income loss would be forthcoming. See Dkt. No. 137-8. Vagish returned the check as untimely. See Dkt. No. 137-9; see also Dkt. No. 134 at 27-31 (explaining partial summary judgment was unwarranted because Seneca failed to comply with the policy's appraisal provisions).

## ARGUMENT

Seneca argues Vagish violated a Protective Safeguard Endorsement that allows it to repudiate Vagish's claim in its entirety and the Court to enter summary judgment. That endorsement reads, in relevant part: "As a condition of this insurance, you are required to maintain the Protective Safeguard(s) listed in the Schedule above." Dkt. No. 1-1 at 7. The schedule only identifies "P-1" as applicable. P-1 provides "[a]ll exterior openings of the building at the covered location are to be locked and secured to prevent access to the building that is not authorized by you." Id. In Seneca's view, Vagish failed to fulfill this condition by removing door locks from uninhabitable, soon-to-be renovated rooms on the fourth floor and using those locks to secure rooms occupied by hotel guests on the lower levels. See Def.'s Mem. 4-6. This motion should be denied for three reasons.

**I.     Seneca waived its right to enforce the endorsement.**

Assuming (for the sake of argument) Vagish violated the policy endorsement, Seneca has long since waived its right to disclaim the policy because (1) it had actual notice of the purported violation well before the fire and (2) it has never acted consistent with an intention to exercise its purported right. Seneca had the Cambridge Plaza Hotel inspected in December 2012 while the renovation was ongoing. With respect to fire protection, the only observation made by the H&S report is that "[a]ll areas have new, updated fire extinguishers[.]" See Ex. A at 1. This report was produced by Seneca, from its file, during this litigation. See id. (marked with a SENECA bates label). According to Mr. Sinha, Seneca never alerted Vagish of any deficiency threatening the policy's continued viability.

To the contrary, Seneca's conduct indicates it believed the policy remained in effect as it continued to collect premium, never returned any premium as unearned, and never sought to cancel the policy. After its post-loss investigation, Seneca issued proof of loss forms to the insured and accepted them in completed form. After questioning Mr. Sinha (during his EUO) and others about the condition of the locks on the doors to the fourth floor hotel rooms, Seneca asked this Court to enforce a contractual appraisal provision and attempted to pay (albeit in an untimely manner) the appraisal award. None of this conduct supports the insurance company's most recent position asking the Court to declare the policy forfeit.

Policy endorsements are not get-out-of-jail-free cards to be played on a whim and an insurance company's failure to timely raise them is grounds for waiver. The general rule is that "[w]aiver is predicable upon any acts or conduct of the insurer, after knowledge of a breach, either before or after loss, tending to show recognition of the validity of the policy and an intent to relinquish the right to avoid it for the known breach." Whaley v. Guardian Fire Ins. Co., 117

S.E. 209, 211 (S.C. 1923); see also Dubuque Fire & Marine Ins. Co. v. Miller, 64 S.E.2d 8, 12 (S.C. 1951) ("insurance company may waive, or be estopped to assert, a ground for avoidance or forfeiture of an insurance policy, and the courts are prompt to seize on any circumstances which indicate a waiver on the part of the company or which will raise an estoppel against it."). Once an insurer has knowledge of a forfeiture, but fails to return premium, negotiates with the insured in a manner that recognizes the continued validity of the policy, or otherwise induces the insured to incur expense under the belief his loss will be paid, the forfeiture is waived. See Whaley, 117 S.E. at 210-11 (collecting cases). "This rule is most frequently applied to a request for proofs of loss from the insured after knowledge of the forfeiture, etc." Id. (quotation omitted). Waiver is also frequently evidenced by an insurer's failure to return premium paid on the disclaimed policy. See Dubuque Fire, 64 S.E.2d at 13 (insurance company with knowledge of a forfeiture at the inception of contract "is estopped to assert such forfeiture *by accepting the premium*, and delivering the policy as a valid contract of insurance." (emphasis original)).

The facts here support the conclusion Seneca waived its right to assert the endorsement such that summary judgment is inappropriate. For instance, in Colony Insurance Co. v. Peterson, 582 F. App'x 156 (4th Cir. 2014), the insurance policy contained an endorsement requiring certain fire protective safeguards, including an automatic sprinkler system, and the insurer was allowed to disclaim coverage if the system was not in working order. Id. at 158. The same day it issued the policy, the insurance company inspected the property. Id. The inspection indicated utilities had been shut off, but the insurer nevertheless issued the policy. Id. at 158-59. After a fire caused by arson, the insurer denied coverage citing the non-working sprinkler system. Id. at 159. The district court denied summary judgment and the jury returned a verdict for the insured, finding that, although the endorsement had been breached, the insurance company waived its

right to rescind and was estopped from denying coverage. Id. The Fourth Circuit affirmed, citing North Carolina law holding an insurer can waive a provision or condition in a policy that is for its own benefit. Id. at 160 (citing Brandon v. Nationwide Mut. Fire Ins. Co., 271 S.E.2d 380, 383 (N.C. 1980) and Blue Bird Cab Co. v. Am. Fid. & Cas. Co., 15 S.E.2d 295, 301 (N.C. 1941)).

Like Colony Insurance, here, the jury must be allowed to decide whether to give the endorsement effect. As in North Carolina, this state has long recognized an insurer's capacity to waive a policy condition designed for its own benefit. See, e.g., Brown v. State Farm Mut. Auto. Liab. Ins. Co., 104 S.E.2d 673, 680 (S.C. 1958) ("Certainly, the insurer had the right to waive the provision of the policy as to the manner of the giving of notice of accident), Fender v. N.Y. Life Ins. Co., 155 S.E. 577, 580 (S.C. 1930) (insured and insurer can waive condition solely for their benefit), Galphin v. Pioneer Life Ins. Co., 154 S.E. 855, 858 (S.C. 1930) (provision written by and for insurer "may be waived by it or its agent."). Like Colony Insurance, Seneca had actual knowledge the fourth floor was under renovation, unoccupied rooms did not have locks, and were being used for storage. Cf. Colony Ins., 582 F. App'x at 163 (insurer received its inspector's report "approximately four weeks" before the fire and was "presumed to be cognizant" of the information in its file). Finally, Seneca's actions since receiving its inspector's report are inconsistent with an intent to enforce the endorsement as it failed to document the purported breach, failed to inform Vagish of a need to cure, failed to notify Vagish of an intent to cancel the policy, and failed to return unearned premium. Cf. id. at 163 (detailing evidence of the same). Seneca's conduct during the litigation bolsters this conclusion further still as it asked the Court to enforce policy terms and has attempted to pay on a policy it now claims is void.

This conduct confirms the existence of coverage and that Seneca's ability to invoke the Protective Safeguard Endorsement has passed. Assuming the endorsement is grounds to disclaim coverage, the Court should hold it waived or, alternatively, submit the issue to the jury.

## II. There is a factual dispute as to the existence of a causal link between Vagish's purported breach and the arson.

Assuming (still for the sake of argument) Vagish breached the endorsement, there is a factual dispute as to whether there is a causal nexus between the breach and the arson. The parties *agree* there must be a causal link: "Under South Carolina law, there is no coverage for a loss when there is a causative link between a policy exclusion or warranty and the loss." Def.'s Supp. Mot., 6 (citing South Carolina Ins. Co. v. Collins, 237 S.E.2d 358 (S.C. 1977), McGee v. Glove Indemnity Co., 175 S.E. 849 (S.C. 1934), and Reynolds v. Life & Casualty Ins. Co. of Tenn., 164 S.E. 602 (S.C. 1932)). Seneca's argument turns on the assumption that if Vagish had locks on all of the fourth floor doors, it would have prevented the fire.

Not so. Vagish has always suspected a disgruntled employee may have set the fire. See, e.g., K. Sinha Dep. 177:9-179:15 (excerpts attached as **Exhibit C**) Vagish was not alone in this suspicion. During his deposition, Vagish lawyer, Steven Ouzts testified Seneca also suspected a Vagish employee as the possible arsonist.

| | |
|---|---|
| Mr. Harpootlian: | Okay.· So at that point, there's some other reason; August, September, October, November, before the lawsuit is filed, that they're not paying that $100,000 [property claim], right? |
| Mr. Ouzts: | Right. |
| Mr. Harpootlian: | And that would be that they believed or had a suspicion that either an employee of or agent of Vagish, had committed the arson, correct? |
| Mr. Ouzts: | That's my understanding, yes. |

8

See S. Ouzts Dep. 34:12-20 (excerpts attached as **Exhibit D**); see also id. at 47:13-49:6 ("That there were employees of Vagish who had access to those rooms."); but see P. Hildebrand Dep. 10:21-11:4 (claiming the fourth floor rooms *were* dead bolted and only Vagish employees had access to the keys) (excerpts attached as **Exhibit E**). Mr. Sinha reported, and Seneca fire cause-and-origin expert Van Tuley reported on July 18, 2013, that the fourth floor had been unoccupied storage for six months and that several employees had recently quit after Mr. Sinha confronted the staff over the theft at the hotel. See Rimkus Rpt., 4 (attached as **Exhibit F**).

If these suspicions prove correct, then the existence of locks on the doors is immaterial because the employee-arsonist would have *authorized* access to those rooms regardless of how they were secured. Cf. Dkt. No. 1-1 at 7 (requiring openings to be locked and secured to prevent access "*not* authorized by you" (emphasis added)). Assuming, as everyone did at the time, an employee was responsible, the arsonist's access was authorized and thus not caused by Vagish's purported failure to secure the fourth floor rooms. Put differently, even if the rooms had been secured as Seneca now claims they should have been, it would not have barred the employee-arsonist's access. To the extent Seneca disagrees, there is a dispute of material fact that must be resolved by the jury. See, e.g., Reynolds, 164 S.E. at 603 (proximate cause of insured's death "were properly submitted to the jury[,]" when determining whether exclusion applied).

### III. The policy endorsement should be construed to exclude doors to vacant rooms that open to covered hallways within the building

The policy endorsement is vague and therefore must be construed not to apply to the fourth floor doors. Contractual ambiguity is a question of law for the Court. Canal Ins. Co. v. Nat'l House Movers, LLC, 414 S.C. 255, 260, 777 S.E.2d 418, 421 (Ct. App. 2015). "Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." Id. at 260–61, 777 S.E.2d at 421 (quoting Diamond

9

State Ins. Co. v. Homestead Indus., Inc._,_ 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995)). A contract is ambiguous when an objective, reasonable individual, aware of the contexts, and knowledgeable of the customs, practices, and terminology of the business, could ascribe more than one meaning to the disputed term. Canal Ins., 414 S.C. at 260-61. When policy language is deemed ambiguous, extrinsic evidence can show intent, however "determination of the parties' intent becomes a question of fact for the factfinder." Id.

The Court should conclude the phrase "exterior openings of the building" is ambiguous for two reasons. First, because of the physical characteristics of *this* hotel—or more accurately, this *motel*—the endorsement construction supported by Seneca would render Vagish in perpetual violation of the endorsement and thus never covered by the policy. The rooms on the second, third, and fourth floors are accessed by an open stairway on both ends of the building. See, e.g., Dkt. No. 135-4 at 2-11 (photos of hotel and damaged rooms). The stairwells are exterior to the building, thus accessible by the public as a common area, as are the elevators and hallways. See id. The exclusion cited by Seneca requires "*[a]ll* exterior openings" to be "locked and secured to prevent access[.]" Dkt. No. 1-1 at 7 (emphasis added). By design, the hotel at issue here grants the public it serves access to the property generally and direct access to its rooms. There are no doors or locks to the stairway and there never have been. Thus, from inception of the policy, Vagish could not lock all exterior openings of the building.

Seneca's stringent reading of the endorsement requires remedial measures by which *no motel* could abide. For instance, one way to read the policy endorsement is that it was drawn for a traditional hotel structure with primary public access through a central lobby and room entry from an interior hallway. But a traditional hotel structure would still risk running afoul of the endorsement under Seneca's reading unless the front door remained locked at all times. "All

contracts should receive a sensible and reasonable construction, and not such a one as will lead to absurd consequences or unjust results." Bruce v. Blalock, 127 S.E.2d 439, 442 (S.C. 1962); see also C.A.N. Enterprises, Inc. v. S.C. Health and Human Services Fin. Comm'n, 296 S.C. 373, 373 S.E.2d 584 (1988) (reasonable, fair and just construction should prevail over unusual or extraordinary). Here, no hotel could serve the public by keeping all "exterior openings" locked and secured at all times. At the Cambridge Plaza Hotel, this would require areas like the lobby and restaurant to be locked during business hours, which they obviously were not. "The general rule of insurance law dictates that conditions precedent which are impossible of performance are ineffectual and void." Boyd & Stevenson Coal Co. v. Dir., Office of Workers' Comp. Programs, 407 F.3d 663, 667 (4th Cir. 2005) (citing Insurance Law and Practice, Appleman, 1981, § 7005; Couch on Insurance 3d, § 83:26; Daburlos v. Commercial Ins. Co., 381 F. Supp. 393, 400 (E.D. Pa. 1974); Strauther v. Gen. Am. Life Ins. Co., 141 S.W.2d 128, 130 (Mo. Ct. App. 1940)). Since Seneca's reading of the endorsement is facially impossible, it should be rejected.

This conclusion comports with longstanding precedent disfavoring insurance contract constructions that result in forfeiture. Generally, courts disfavor forfeitures, and "[i]t is also settled that a contract of insurance, so far as a forfeiture clause is concerned, must be taken most strongly against the insurer." Scott v. Liverpool & London & Globe Ins. Co., 86 S.E. 484, 487 (S.C. 1915). This rule of construction recognizes:

> Insurance companies frame their own policies, use their own language, except when compelled by the legislature to use a standard policy; insert their own complicated, and in some instances obscure and equivocal, conditions; and courts uniformly give the insured the benefit of any doubt in the construction of the terms used in such policy.

Brown, 104 S.E.2d at 680 (quoting Harwell v. Mut. Ben. Health & Acc. Ass'n, 35 S.E.2d 160, 163 (S.C. 1945)). These principles offer particularly necessary guidance here in light of Seneca's

recent, untimely embrace of its current position asking to prevail by technical default notwithstanding almost four years of conduct to the contrary.

## CONCLUSION

For the reasons set forth above, the motion should be denied.

Respectfully submitted,

s/James M. Griffin
James M. Griffin (Fed. ID No. 1053)
GRIFFIN DAVIS, LLC
1116 Blanding Street, First Floor (29201)
P.O. Box 999
Columbia, SC 29202
Tel. 803.744.8000
Fax 803.744.0805
jgriffin@griffindavislaw.com

Richard A. Harpootlian (Fed. ID No. 1730)
Christopher P. Kenney (Fed. ID No. 11314)
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street (29201)
Post Office Box 1040
Columbia, South Carolina 29202
(803) 252-4848
Facsimile (803) 252-4810
rah@harpootlianlaw.com
cpk@harpootlianlaw.com

Leigh J. Leventis (Fed. ID No. 2661)
The Law Offices of Leigh J. Leventis
1913 Bull Street (29201)
Post Office Box 11067
Columbia, South Carolina 29211
(803) 256-0113
Facsimile (803) 799-1612
leighleventis@aol.com

ATTORNEYS FOR THE PLAINTIFFS

August 9, 2016
Columbia, South Carolina.