IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| VAGISH LLC d/b/a CAMBRIDGE PLAZA HOTEL; and VA VA VAGISH LLC d/b/a LEGENDS LOUNGE,<br><br>Plaintiff,<br>v.<br>SENECA SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 3:13-CV-03161-TLW<br><br>REPLY IN SUPPORT OF SENECA SPECIALTY INSURANCE COMPANY'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT |

Defendant Seneca Specialty Insurance Company ("Seneca"), by and through counsel, pursuant to Local Civil Rule 7.07, files its Reply in Support of its Supplemental Motion for Summary Judgment, respectfully showing the Court as follows:

## I.  INTRODUCTION

Seneca's Supplemental Motion for Summary Judgment asserts that Plaintiffs were not in compliance with their insurance policy's ("policy") Protective Safeguards Endorsement at the time of the loss. Specifically, Plaintiffs admitted during discovery that the rooms where the fire originated were not locked at the time of the subject fire. In response to Seneca's Motion for Summary Judgment, Plaintiffs do not dispute that the rooms were unlocked or that the policy's Protective Safeguards Endorsement required that the rooms be secured. Rather, Plaintiffs assert (1) that Seneca waived the Protective Safeguards Endorsement by adjusting the claim, invoking the appraisal clause, and attempting to pay the appraisal award in June of 2015 with knowledge that the rooms were not secured at the time of the June 2013 fire; (2) there is no causative link between the exclusion and the loss because Plaintiffs speculate that the fire was started by

disgruntle employee(s) with access to the building; and (3) the Protective Safeguard Endorsement is vague and ambiguous.

As shown in greater detail below, Seneca first learned that the fourth floor rooms where the fire occurred did not have locks when Seneca deposed Plaintiffs' 30(b)(6) witness on October 26, 2015, 4 months after Seneca attempted to pay the appraisal award. Further, the evidence establishes that the "disgruntle" employees who Plaintiffs believe "could" have started the fire would not have had access to the fourth floor rooms if the rooms had been locked. Finally, there is no legitimate argument that the Protective Safeguards Endorsement is ambiguous or that the endorsement is otherwise unclear that where access to the building is not authorized by the Plaintiffs, those portions of the building must be locked and secured. These undisputed facts entitle Seneca to judgment as a matter of law.

## II.     ARUMENT AND CITATION OF AUTHORITY

### A.  Seneca Did Not Waive the Protective Safeguards Endorsement

Plaintiffs begin by asserting that Seneca waived the Protective Safeguards Endorsement because Seneca had notice that Plaintiffs were in violation of the Protective Safeguards Endorsement, but failed to cancel the policy. [Doc. 150, p. 5]. In order to successfully make this argument, Plaintiffs must put forth evidence establishing that Seneca had knowledge of Plaintiffs' non-compliance with the Protective Safeguards Endorsement either prior to the fire or prior to Seneca issuing and accepting proofs of loss, invoking the policy's appraisal provision, or attempting to pay the appraisal award. Plaintiffs cannot meet this burden because the evidence establishes that Seneca first learned that the fourth floor rooms were unlocked during the October 29, 2015 deposition of Plaintiffs' corporate representative, which occurred well after the aforementioned dates.

2

In an effort to meet their burden, Plaintiffs assert that "Seneca had actual knowledge the fourth floor was under renovation, unoccupied rooms did not have locks, and were being used for storage." *Id.* at p. 7. In support, Plaintiffs cite to a 2012 inspection report, which provides (in pertinent part) that "bottom two floors have been renovated, so each [heating and air conditioning] unit had been checked or replaced. The replaced units were taken from down units on the third or fourth floors and refurbished." [Doc. 150-1, p. 2]. However, there is no reference in the report that the third and fourth floor rooms were left open when the air conditioning units were removed, and by Plaintiffs' own admission, the openings were covered by installing louvers or grills where the air conditioning units had been located. [*Id.*, Doc. 150, p. 3]. In fact, the inspector who completed the report, Charles Kneisley, has provided affidavit testimony that the aforementioned language from the inspection report did not indicate in any way that there were unsecured openings in the building. [Aff. of Charles Kneisley, ¶ 9][Kneisley Aff. attached as Ex. "A"]. Rather, Mr. Kneisley testified that "where the heating and air conditioning units were removed from the third and fourth floor motel rooms, the resulting openings were covered." Further, Mr. Kneisley noted that at the time of his inspection, "all exterior openings of the motel were properly secured, including the use of locks on the motel rooms," and that if an exterior opening had not been properly secured, he would have noted the unsecured openings in his report. *Id.* at ¶ 10-12. Notably, the report's burglary section states that doors were secured by double cylinder locks. [Doc. 150-1, p. 2]. Other than the December 2012 inspection report, Plaintiffs offer no evidence that Seneca had knowledge of Plaintiffs' non-compliance with the policy's Protective Safeguards Endorsement.

In sum, Plaintiffs cannot establish that Seneca had knowledge that Plaintiffs were not in compliance with the Protective Safeguards Endorsement when Seneca issued and accepted proof

of loss forms on August 1, 2013, August 15, 2013, and September 26, 2013; enforced the policy's appraisal provision on February 21, 2014, and attempted to pay the appraisal award on June 30, 2015. [*Id.* at p. 3-4]. Rather, the evidence establishes that Seneca learned that the fourth floor rooms did not have locks during the deposition of Plaintiffs' 30(b)(6) witness, which occurred on October 29, 2015. [Doc. 140-2].[1] As such, Seneca did not waive the policy's Protective Safeguards Endorsement.

### B. There is a Causative Link Between Plaintiffs' Failure to Comply with the Protective Safeguard Endorsement and the Subject Loss

Plaintiffs next assert that even if the fourth floor rooms had been locked, the "disgruntled" employee(s) Plaintiffs speculate could have caused the fire would have had access to the rooms. [Doc. 150, p. 8-9].[2] However, this argument assumes that all employees of the Cambridge Plaza Hotel had unfettered access to all rooms and areas of the hotel at all times. However, that was not the case. Specifically, Plaintiffs' 30(b)(6) witness testified that the keys to rooms secured by deadbolts were originally stored in a digital safe, then later maintained by employee Sydnee Wilson. [Sinha Dep. p. 67-68].[3] As such, at the time of the fire, had the fourth floor rooms been locked, only employee Sydnee Wilson would have had access to those rooms and would have had knowledge of any employee to whom she granted access.[4] Simply put,

---

[1] In fact, prior to the evidence adduced during the Plaintiffs' deposition, Seneca's own expert, Peter Hildebrand, was under the impression, after his review of all evidence gathered during discovery, that the rooms were in fact locked. [Doc. 150-5, p. 3]. Following Plaintiffs' 30(b)(6) deposition, Seneca subsequently confirmed that the fourth floor rooms did not have locks by deposing former Vagish employee Heidi Bland on November 4, 2015 and SLED Agent Brad Keller on December 15, 2015. [*See* Doc. 140-3; 140-4].
[2] Plaintiffs also speculate that the fire was caused by the same individual who caused another arson fire a few miles away from the Cambridge Plaza Hotel the night before the subject fire or competitors to the Cambridge Plaza Hotel. [Sinha Dep. p. 173-79][excerpts from Sinha Dep. attached as Ex. "B"].
[3] Former employee Stewart Claire testified that when the keys were maintained in the digital safe, only Claire, Kislaya Sinha, and former employee Heidi Bland had access to the safe. [Claire Dep. p. 47-48][excerpts from Claire dep. attached as Ex. "C"].
[4] It should be noted that Plaintiffs do not consider former employee Sydnee Wilson a "disgruntled employee," as Kislaya Sinha testified that Wilson was a rock star, "she's so lovely," and that he tries all the time to re-hire Wilson. [Sinha Dep. p. 77-79].

4

even if the fire were caused by a disgruntled employee, as Plaintiffs allege, the employee would not have had access to the rooms if the rooms had been locked.

### C. The Protective Safeguard Endorsement is Not Vague or Ambiguous

Finally, Plaintiffs assert that the phrase "exterior openings of the building" contained within the Protective Safeguard Endorsement is vague and ambiguous. Specifically, Plaintiffs assert that the Cambridge Plaza could not comply with the Protective Safeguard Endorsement because (1) rooms on floors two through four are accessed by an open stairway on both ends of the building, which are accessed by the public and, by design, cannot be secured; and (2) the Protective Safeguard Endorsement would require that all exterior openings, including lobby and restaurant areas, be locked at all times. [Doc. 150, p. 9-11]. However, both arguments are without merit because the arguments ignore the Protective Safeguards Qualifying language "to prevent access to the building that is not authorized by you."

The Protective Safeguards Endorsement only requires that the insured secure exterior openings of the building to prevent **unauthorized access**. The outside stairways and outside hallways are not exterior openings of the building and their use does not permit unauthorized access to the building. Clearly, a non-guest traversing the exterior stairways and hallways cannot gain access to a room that is locked and otherwise properly secured. Further, the lobby and restaurant are public areas to which the Plaintiffs have granted the public access. As such, because the insured has granted the public access to those areas, the Protective Safeguards Endorsement does not require that the Plaintiffs lock and secure those areas.

### III. CONCLUSION

For the forgoing reasons, Seneca respectfully requests that this Court grant its Motion for Summary Judgment.

Respectfully submitted,

DREW ECKL & FARNHAM, LLP

*/s/Russell Thomson*
Russell Thomson
Fed Id No.  11870
Paul W. Burke
Admitted *Pro Hac Vice* (GA Bar No 095642)
Eric R. Mull
Admitted *Pro Hac Vice* (GA Bar No 556860)

880 W. Peachtree Street
Atlanta, GA  30357-0600
Telephone:     (404) 885-1400
rthomson@deflaw.com
pburke@deflaw.com
emull@deflaw.com

6

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing **REPLY IN SUPPORT OF SENECA SPECIALTY INSURANCE COMPANY'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT** on all counsel by using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

This 16th day of August, 2016.

*/s/Russell Thomson*
Russell Thomson
Fed Id No.  11870

P.O. Box 7600
Atlanta, Georgia  30357-0600
(404) 885-1400
(404) 876-0992 (fax)


6618934/1
05596-088833

7